SHARPE *v.* STATE

[No. 206, September Term, 1962.]

*Decided May 7, 1963.*

*Motion for rehearing filed May 29, 1963, denied June 28, 1963.*

The cause was argued on February 7, 1963, before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

The cause was reargued on April 1, 1963, before the full Court.

*Archie D. Williams,* on both arguments, for appellant.

*Jacques E. Leeds, Assistant Attorney General,* (on reargument), with whom were *Thomas B. Finan, Attorney General, Jacques E. Leeds, Assistant Attorney General, William J. O'Donnell, State's Attorney and Dene L. Lusby Assistant State's Attorney,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was tried and convicted in the Municipal Court of Baltimore City on charges of disorderly conduct and of assaulting a police officer. He was sentenced to thirty days in jail on the first charge and sixty days on the second, to run concurrently. On appeal to the Criminal Court of Baltimore he was tried by the court without a jury and again found guilty on both charges, sentenced to thirty days on the first charge and six months on the second, to run concurrently. The appeal to this Court is based on Code (1962 Supp.), Art. 5, sec. 12A (2), "Where the sentence of the Municipal Court of Baltimore City was imprisonment only and the sentence of the Criminal Court of Baltimore on appeal therefrom is imprisonment for a greater term * * *." Technically, it appears that only the judgment in the assault case is before us. Sec. 12A provides that only where a case is brought within the exceptions listed is there a further appeal to this Court.

There were two versions of what occurred, but since both the triers of fact chose to believe the testimony of the police officers, and we cannot find that the trial judge was clearly wrong if there was credible evidence to support his findings, we shall simply state the substance of the testimony of the officers. According to them, on March 1, 1962, about 5 P. M., while they were on cruising patrol in a police car, the appellant backed his car out of an alley without stopping, causing them to make an abrupt stop to avoid collision. See Code (1957), Art. 66½, sec. 243. Cf. Sec. 234. Officer McGuire ordered the appellant to pull over to the curb, approached the car on foot and asked the appellant for his operator's license and registration card. Sharpe got out his wallet containing his driver's license, but refused to take the license out. He told the officer: "you can see it enough where it is." He also said: "I ain't taking this g.. d.. license out of this wallet." The officer then told Sharpe he was under arrest for disorderly conduct, and asked him to get out of the car. Sharpe replied: "If you want me out of this m..........f...... car, you are going to have to take me out." Obviously, he did not submit to arrest. A woman passenger in the car got out the other side. Sharpe then got out and started to walk away. On the facts in this case, the arrest did not occur until McGuire grabbed his coat. Cf. *Childress v. State,* 227 Md. 41, 43. A scuffle ensued in which Sharpe struck the officer with his fists, and tore his shirt. The other officer Block, who had remained in the patrol car, then came to McGuire's assistance and they took Sharpe to the station house. Block testified he heard profanity used by Sharpe and saw him strike the first blow. He also testified that a crowd had gathered at the time of the scuffle. Another witness, Mrs. Evans, who was sitting in a cab that had stopped along with other traffic, heard Sharpe "talking back" to the officers.

The case turns on the legality of the arrest. If the arrest was lawful, the appellant was not justified in resisting it, and assaulting the police officer. See *Kellum v. State,* 223 Md. 80, 85 and *Price v. State,* 227 Md. 28, 41. We think the arrest was lawful. Officer McGuire was clearly within his rights in asking to see Sharpe's operator's license, after he had witnessed a traffic violation. *Bradley v. State,* 202 Md. 393, 397. Cf. *Cornish v. State,* 215 Md. 64, 67. Code (1957), Art. 66½, sec. 97 ex-

pressly provides that "Operating licenses shall at all times be carried by the licensee when operating a motor vehicle * * *, and shall be subject to examination upon demand by an uniformed officer of the law * * *." Sec. 338 makes it a misdemeanor to violate "any of the provisions of this article unless * * * declared to be a felony." See Sec. 31, for similar provisions as to registration cards. Under a similar statute in Indiana, it was held that an arrest for failing to exhibit a driver's license was lawful, *Rucker v. State,* 77 N. E. 2d 355, 357.

The request that the card be removed from the wallet was not unreasonable. Some licenses have restrictions, or other data, on the back, and the officer testified that it was departmental policy not to "handle personal property," such as a wallet. Refusal to obey a proper order of an officer may constitute an offense justifying an arrest, particularly where there is profanity in the presence of others that may threaten a breach of the peace. Cf. *Drews v. State,* 224 Md. 186, 192 and cases there cited. See also *Lippert v. State,* 139 N. Y. S. 2d 751; *City of St. Petersburg v. Calbeck,* 121 So. 2d 814 (Fla.) ; *City of Saint Paul v. Morris,* 104 N. W. 2d 902 (Minn.). Other cases are collected in a note, 34 A.L.R. 566. In the present posture of the case, however, we do not reach the question whether the charge of disorderly conduct could be justified. We hold that the arrest was justified for failure to comply with the officer's demand to examine the operator's license under the circumstances. The fact that he was not charged with that offense would seem to be immaterial. Cf. *Price v. State, supra,* where charges of assault upon an officer were sustained, because the officer had reasonable grounds to believe that the accused was attempting burglary at the time of the arrest, although never charged with that offense.

*Judgment affirmed, with costs.*

MARBURY, J., filed the following dissenting opinion, in which BRUNE, C. J., and HAMMOND, J., concurred.

I think both judgments should be reversed without a new trial. Maryland Rule 886 a.

I agree that the version of the facts as set forth in the ma-

jority opinion is substantially a true narration of the events leading to appellant's arrest, trial and conviction for disorderly conduct and assault upon an officer. I further agree that the case turns upon the legality of the arrest for disorderly conduct, but it seems to me that the majority opinion misses the salient point in the case. Appellant was not arrested and tried under Code (1957), Article 66½, §§ 97 and 338. He was arrested for disorderly conduct under Article 27, § 123, and the gist of the crime of disorderly conduct has been stated by this Court to be "* * * the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area." *Drews v. State,* 224 Md. 186, 192, 167 A. 2d 341.

A careful examination of the testimony convinces me that the evidence was insufficient to support a finding that the appellant was guilty of disorderly conduct. Rule 886 a, *supra.* No doubt, a scuffle arose between the appellant and the arresting officer. The question is whether, prior to the scuffle, words or actions of appellant were sufficient to justify his being placed under arrest for disorderly conduct. Accepting the officer's testimony as true, there was no evidence that appellant's alleged vile language was such as to offend, disturb, incite, or tend to incite a number of people gathered in the same area. There was no evidence that anyone, except Officer McGuire, and possibly Officer Block, heard what appellant said in the presence of Officer McGuire. Cf. *Heinze v. Murphy,* 180 Md. 423, 428, 24 A. 2d 917. I point out that the profanity used by the appellant did not involve a characterization of the officer or calling him a vile name.

The majority opinion seems to read into Section 123 of Article 27 something that is simply not there. If this section should be amended to include using profane language in the presence of an officer, or failing to comply with a proper demand of a traffic officer (Code (1957), Article 66½, § 97), this is a matter for consideration by the Legislature and does not justify judicial legislation to amend the statute with reference to disorderly conduct.

The cases from other jurisdictions cited in the majority opinion are all distinguishable, either on their facts or due to a

specific statute in each of those jurisdictions not comparable to the Maryland statute dealing with disorderly conduct. In all of those cases, the profanity or vile remarks consisted of derogatory characterizations of the police officers involved. As stated above, this element was not present in the instant case. In *City of St. Paul v. Morris,* 104 N. W. 2d 902, 911, there was a vigorous dissent by Justice Loevinger of the Supreme Court of Minnesota, in which he stated, *inter alia*:

"The very violence of feeling aroused by an offensive expression should warn judges of the dangers of being injudicious and of the impropriety of determining legal significance by their own reactions or feelings. The mere fact that acts or words are offensive does not mean that they are 'disorderly' or within that special category of disorderly described as noise, riot, disturbance, or diversion."

I do not see how there could have been disorderly conduct prior to the arrest in this case, particularly in the absence of testimony of any persons other than the officers being affected by the language.

Since, as I see it, the arrest was illegal, appellant was justified in using any reasonable means, even force, to effect his escape. *Williams v. State,* 204 Md. 55, 64, 102 A. 2d 714; *Sugarman v. State,* 173 Md. 52, 57, 195 Atl. 324. I am of the opinion that appellant was not guilty of assault under the circumstances in using reasonable means to resist an unlawful arrest.

In spite of the provisions of Code (1962 Cum. Supp.), Article 5, § 12A, cited by the majority, that technically only the assault case is before us, I consider that the disorderly conduct charge and the assault charge are so intertwined that a consideration of the latter, without a consideration of the former, would be untenable and a denial of justice to the appellant. The disorderly conduct charge could have been brought before this Court by appropriate action under Code (1957), Art. 5, Sec. 21, and this case was treated by both sides as properly before us and we called for a reargument on the question of what constituted disorderly conduct. We think that this Court should have done what it did in *Moulden v. State,* 217 Md. 351, 142

A. 2d 595, and should have treated the appeal as a petition for a writ of certiorari and should have granted the application and determined this case on the merits.

Chief Judge Brune and Judge Hammond authorize me to say that they concur with the views here expressed.

HAMMOND, J., filed the following concurring dissent, in which BRUNE, C. J., concurred.

I concur in the dissent prepared by Judge Marbury but I deem it appropriate to add further observations.

The majority decides this case on a point (that the arrest was lawful because Sharpe had violated Code (1957), Art. 66-½, Sec. 97—failure to exhibit license) that was not raised, considered or decided below, was not mentioned in either brief and was not referred to—or apparently even thought of—by the arresting officer, and then, it is clear to me, decides it wrongly.

The majority opinion suggests that refusal to obey a proper order of an officer "may" constitute an offense "particularly where there is profanity in the presence of others that may threaten a breach of the peace," (which is so when a statute makes it so, but Maryland has no such statute) and then expressly—and understandably—avoids deciding that Sharpe was guilty of disorderly conduct. There was no evidence that profanity likely to threaten a breach of the peace was used in the presence of others.

Nor was there, taking the arresting officer's version of the affair, evidence sufficient to convict one of violation of Art. 66½, Sec. 97. When Sharpe was asked for his license, he took his wallet from his pocket and exhibited the license to the officer. It is not clear from the meagre record, but it well may be that the license was in a plastic "page" of the wallet, so that both front and back could be seen without its removal. The arresting officer's testimony could so indicate. He said that Sharpe said "You can see it enough where it is," and that he, the officer, "didn't answer." The officer has never said he could not sufficiently see the license while it was in the wallet. The majority says that the officer's request that the license be removed from the wallet was "not unreasonable." If this be assumed, as well as that Sharpe's refusal to remove it was unreasonable, mere unreasonableness is not a crime. What is more to the point,

the officer did not think that Sharpe had violated the inspection of licenses statute because it was only when Sharpe used the words "God damned" (in reference to the license) that the officer arrested him. He then immediately told Sharpe he was under arrest for disorderly conduct.

The arrest was illegal because Sharpe had not been guilty either of disorderly conduct, with which he was then charged, or of violation of Sec. 97 of Art. 66½, of which the majority of this Court, in effect, trying the case de novo for the second time, now find him guilty.

Since Sharpe was told he was under arrest for disorderly conduct, of which he was not guilty, his right to resist arrest was established; and the means availed of under the circumstances, including the subsequent profanity, were not beyond the permissible range, if the black letter right to resist illegal arrest is to be more than a paper or theoretical right and is to be recognized in practice.

The police have a difficult time in performing their onerous duties, and citizens should cooperate with them. Nevertheless, a police officer has no right to throw his weight around and require subservience to his authority just because he has it or to take out his irritation on the other driver because a car backs out of an alley in front of him (he was not charged with a traffic violation). Sharpe was foolish and boorish; and his reaction to being pushed around, as he saw it, should have been restrained, as should his use of profanity which was ill-advised, unattractive and an empty substitute for thought, as it usually is. In this case, it brought him only a severe beating by the two officers, arrest and conviction.

The officer's impolitic conduct should not have produced Sharpe's discourtesy or arrogance in return, but while discourtesy or arrogance to a policeman may infuriate him, and so are unwise to indulge in, they are not crimes which the policeman may translate into disorderly conduct in order to vent his annoyance by making an arrest.

I would reverse. Judge Brune has authorized me to say that he concurs in the views herein expressed.