## HARRIS *v.* STATE

[No. 118, September Term, 1964.]

*Decided January 8, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, SYBERT and OPPENHEIMER, JJ.

*Tucker R. Dearing* for the appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Alfred T. Truitt, Jr., State's Attorney for Wicomico County,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Cleveland Harris, appellant, was tried on two charges of assault and one of disorderly conduct. He elected a nonjury trial. Judge Taylor found him not guilty on both charges of assault, but guilty of disorderly conduct, for which a fine of $25 was imposed. This appeal is taken from that judgment and sentence.

On Sunday, September 29, 1963, the Meat Cutters Union, Local No. 199, held a meeting at the Teamsters Hall in Salisbury. During the course of that meeting, appellant, a member of the National Association for the Advancement of Colored People, who was not associated with the union or an employee at the Campbell Soup plant where it operated, tried to enter the hall, which subsequently caused the adjournment of the meeting. Afterward, Harris was approached by Jack Birl, a personal friend and president of Local No. 199, who invited him to attend and speak at the local's next meeting on October 6.

The meeting of October 6 was scheduled to begin at 2 p.m. Appellant arrived at the hall a half-hour early. He was greeted by Birl, who told him that his invitation to attend had been revoked that morning by the vice-president of the International, explaining that the meeting had been called to elect new officers and was closed to all non-members. However, appellant did not leave the premises, but approached one of the two women checking membership lists and sought entrance to the meeting. An argument ensued and Birl came out of the hall at the checker's request, to again explain to Harris that his invitation had been withdrawn. Nevertheless, appellant said: "I'm coming in."

After Birl returned to the meeting, Harris attempted to enter the hall. He had been standing on a small porch at the entrance and moved through the door where he was stopped by

the chief of police, William Chatham, whose assistance had been requested a short time earlier by the manager of the hall. Harris went back outside without any trouble. At this time, the chief stationed two officers at the door with instructions to keep Harris and all other non-members out of the local meeting.

During the afternoon, appellant intermittently addressed a crowd of twenty-five to thirty Negroes that had congregated in front of the hall. From the porch, in a loud voice audible on the street, Harris yelled anti-racial invections against the police. Shortly after 4 p.m., three to five members came out of the meeting and shouted to appellant to come in, whereupon he told the officers that he was going in. One of the officers did not understand what the members had shouted, and suggested that Harris wait until he could find out whether or not it was all right for him to enter. However, Harris persisted, pushing the officer three to four feet into the hall. He was then placed under arrest but he kept shoving. A second officer came to the aid of the first and, in the scuffle, was hit in the eye by the appellant's elbow. Finally, Harris and an officer fell from the porch to the checkers' table, where the struggle ceased and he was taken away.

The appellant first contends that the lower court committed reversible error in excluding evidence offered to show that the members voted favorably to permit him to enter the meeting. There was a conflict in the evidence as to whether or not Harris' exclusion from the meeting was put to a vote. Birl testified that it was not, while two other witnesses testified that it was. Proffers made of nine additional witnesses were objected to by the State and sustained by the trial court. Appellant claims that the testimony of these nine witnesses was admissible to contradict or impeach Birl's statement. The general rule is that a witness may be contradicted or impeached by other witnesses on such matters and facts as are likely to affect his credibility. Likewise a witness may be cross-examined for the same purpose. *Kantor v. Ash,* 215 Md. 285, 137 A. 2d 661; *Mahan v. State,* 172 Md. 373, 191 Atl. 575. However, an exception to this rule is that a witness may not be impeached or contradicted by testimony or cross-examination in respect to facts that are collateral, irrelevant or immaterial to the issues of the case.

*Kantor v. Ash, supra; Balto. Transit Co. v. Castranda,* 194 Md. 421, 71 A. 2d 442; *Consol. Beef Co. v. Witt & Co.,* 184 Md. 105, 40 A. 2d 295. In our view, if it be assumed that the trial judge would not have abused his discretion in admitting the testimony there was no prejudicial error in his refusal to admit it because it was cumulative. Two witnesses had testified to what the appellant says the nine additional ones would also testify.

The appellant next contends that the judge erred in refusing to grant his motion to quash the warrant and dismiss the charges against him on the ground that his arrest was illegal. This contention is made on the claim that there was not sufficient evidence to support his conviction of disorderly conduct. We do not agree. He was found guilty of disorderly conduct not so much because of what he said but what he did. Although Harris once before disrupted a meeting of Local 199, he was invited to attend a second meeting, but this invitation was withdrawn. Nevertheless, he remained insistent upon entering the hall, so the assistance of the police was solicited to keep him out and to prevent him from creating another disturbance. The situation was volatile, and appellant tried to make it more so by appealing to the passions of his sympathetic crowd of onlookers. Then, out of the meeting came a few members, yelling to Harris to come inside. An officer then on duty whose instructions had not been countermanded by those who had given them, repeated them to Harris and reasonably suggested that he wait until it could be determined whether or not it was all right for him to enter. Rather than do this, appellant, with a wilful disregard for the possible disturbance his presence in the meeting may have created, pushed the officer and forced his way through the door, thereby causing his arrest. We think this evidence was sufficient to support the verdict against him. A failure to obey a reasonable and lawful request by a police officer fairly made to prevent a disturbance to the public peace constitutes disorderly conduct. *Sharpe v. State,* 231 Md. 401, 190 A. 2d 628; *Drews v. State,* 224 Md. 186, 167 A. 2d 341 (vacated on other grounds, 378 U. S. 547, 12 L. Ed. 2d 1032).

Harris was convicted of violating Section 124 of Article 27 of the Code (1964 Cum. Supp.), which provided in part:

> "Any person who shall enter upon the land or premises of any other person, whether such person be the owner or lessee of said land or premises, and wilfully act in a disorderly manner by making loud and unseemly noises, or by profanely cursing or swearing or using obscene language or acting in any other disorderly manner while thereon, shall upon conviction thereof be sentenced to pay a fine of not less than one dollar and not more than twenty-five dollars * * *."

He claims that this section is constitutionally objectionable for one or both of two reasons: it is vague beyond the permissible limits of the due process clause of the Fourteenth Amendment, and it infringes upon the right of free speech. We find neither contention meritorious. The Supreme Court has held constitutional disorderly conduct statutes similar to that now before this Court even though the constitutional attacks made against those statutes were the same as are now being made against Section 124, Article 27. *Feiner v. New York,* 340 U. S. 315; *Chaplinsky v. New Hampshire,* 315 U. S. 568. See also *Cantwell v. Connecticut,* 310 U. S. 296. It is significant to note that in two cases involving a companion statute of that now in question (Section 123, Article 27), the Supreme Court, while setting aside disorderly conduct and breach of peace convictions on other grounds, left the statute underlying those convictions constitutionally intact. *Drews v. Maryland,* 378 U. S. 547, 12 L. Ed. 2d 1032, reversing 224 Md. 186, 167 A. 2d 341; *Niemotko v. Maryland,* 340 U. S. 268, reversing 194 Md. 247, 71 A. 2d 9. We hold, therefore, that Section 124 of Article 27 does not offend the due process clause nor does it infringe upon free speech.

*Judgment affirmed.*